# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUE THAO, | CV F 03-6275 AWI DLB HC |
| Petitioner, | REPORT AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| GAIL LEWIS, | [Doc. 1] |
| Respondents. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### PROCEDURAL BACKGROUND

On October 28, 1999, in the Fresno County Superior Court, Petitioner pled guilty to seven counts of robbery, three counts of assault with a deadly weapon, one count of first-degree burglary, two counts of forcible rape, and one count of penetration by a foreign object. Petitioner was sentenced to thirty years in state prison.

Petitioner filed a timely notice of appeal with the California Court of Appeal, Fifth Appellate District. Appellate counsel filed a Wende brief pursuant to People v. Wende, 25 Cal.3d 436 (1979), asking the appellate court to make its own independent examination of the record. (Respondent's Exhibit A, attached to Answer.)

Petitioner filed a petition for writ of habeas corpus in the Fifth District Court of Appeal. (Respondent's Exhibit B, attached to Answer.) The State filed a letter brief in response.

1

(Respondent's Exhibit C, attached to Answer.)  On February 6, 2002, the Court of Appeal issued an opinion denying Petitioner's habeas corpus petition and affirming the judgment. (Respondent's Exhibit E, attached to Answer.)

Petitioner filed a petition for review with the California Supreme Court.  (Respondent's Exhibit F, attached to Answer.)  On May 15, 2002, the petition was denied.  (Respondent's Exhibit G, attached to Answer.)

On August 7, 2002, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  (Respondent's Exhibit H, attached to Answer.)  On March 5, 2003, the petition was denied.  (Respondent's Exhibit I, attached to Answer.)

## STATEMENT OF FACTS[1]

> In 1994 defendant Ger Lee married Kha . . . in [a] traditional Hmong ceremony.  He was to pay [Kha's] family $5,000 but only had $2,000.  He and Kha then moved to Wisconsin to live with his sister.  Within three months Kha left him contacting police that the defendant had battered her.  On December 27, 1994 the defendant and several of his gang friends came to [Kha's family] home in Clovis with the defendant wanting to reunite with his bride.  He was arrested by the Clovis Police Department.
>
> On June 23, 1998 defendant Lee was at Hue Vang's residence in Sacramento along with Pao Vang, Zue Her and Sue Thao.  Lee admitted he decided to get his money back due to the failed marriage.  The other four co-defendants needed money and believed they would be successful in obtaining money.  All five got into Lee's vehicle.  Before leaving Sacramento Hue Vang took along a .9 millimeter handgun and duct tape.  Arriving in Fresno on June 24, 1998 after 1:00 a.m. they drove by the [victims'] residence several times seeing no inside lights on.  On the way to Fresno plans were made for Lee to stay in the living room as the [victims] would recognize his voice.  Hue Vang was to confront the parents . . . Sue Thao and Pao Vang were to confront several of the children [a 19 year old, two 10 year olds, and an 8 year old].  Xue Her was to confront the female victim, age 18.  Lee's ex-wife was not at the residence as she was in fact living in another state at the time.
>
> All wore ski masks and dark clothing or bandanas with holes cut out over their faces.  Hue Vang and Sue Thao had screwdrivers to pry the windows of the residence.  They pried the windows open and the front porch light was unscrewed to foil their detection.  Lee stayed in the living room until all seven victims' [- -] parents plus five children [- -] were bound with electrical cord or telephone cord. Duct tape was used and their eyes were taped.  Thao had a kitchen knife and Pao Vang had a long wooden stick with Hue Vang armed with a .9 millimeter handgun.

---

[1] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth Appellate District appearing as Exhibit E, of the Answer to the Petition for Writ of Habeas Corpus, which was derived from the probation report of Petitioner.  The Court finds the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

2

> They ransacked the residence for approximately 30 minutes but found no money. Hue Vang and Thao verbally threatened the victims as to where their money was. Hue Vang then began to beat on the father . . . Thao beat on the mother . . who received blows by a wooden stick and fists causing a swollen jaw and bruises requiring hospitalization. Pao Vang beat [the 19-year-old victim] on the legs with a wooden stick causing it to break.
> Prior to leaving, Hue Vang went into the 18-year-old female victim's bedroom and spent approximately 10 to 20 minutes. He pulled her pajamas down and pushed her top up and penetrated the victim's vagina with his finger and then penetrated the victim's vagina with his penis and ejaculated. He left the room and Sue Thao entered and spent approximately 20 minutes in the room. Thao started to masturbate in front of the victim. He then tried to penetrate her vagina with his penis but could not. He cut her leggings and rolled her over onto her stomach and made her get on her knees. He then penetrated her vagina from behind, raping her for approximately 10 minutes. During this time someone came into the room yelling at Thao for 'taking too long.' Semen from Hue Vang and Thao were identified through DNA. All five defendants left the residence at approximately 5:00 a.m. Family members were able to get free and went outside yelling for help with neighbors then calling 911.
> Taken from the [victims'] residence were a VCR, two stereo speakers, Super Nintendo games, a Canon computer printer, a $120 Money Order, and $280 in cash and two 24 karat gold necklaces. The cash was split among the defendants. All were arrested in Sacramento with [the victims'] property found at Hue Vang's and Ger Lee's residences. The .9 millimeter handgun was found in the car Hue Vang was driving at the time of his arrest and was found to have been stolen in the Sacramento area.

(Respondent's Exhibit E, attached to Answer, at 6-8.)

## DISCUSSION

A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting

3

Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.  Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness

by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.      Involuntary Plea

Petitioner contends that his guilty plea was involuntary because it was coerced by the trial court. Specifically, Petitioner contends that the trial judge was biased and wanted to give him a long sentence. Petitioner further contends that the judge threatened him with a long term sentence, thereby coercing his plea.

The United States Supreme Court, in Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602 (1973), held that when "a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea

By pleading guilty, a defendant waives the right to a jury trial, to confront one's accusers, to compel the attendance of witnesses, and generally to challenge the evidence that he committed the offense. See Boykin, 395 U.S. 238, 89 S.Ct. 1709. Typically, one who enters a valid guilty plea, cannot on habeas corpus challenge pre-plea constitutional violations. Tollett v. Henderson, 411 U.S. 258, 266-67, 93 S.Ct. 1602 (1973); see also Moran v. Godinez, 57 F.3d 690, 700 (9th Cir.1994) ("As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations"). Such a petitioner may only contend that his guilty plea was not voluntary and intelligent (see e.g., Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985); Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1711-12 (1969)) or challenge the assistance of counsel under the Sixth Amendment. See, e.g., McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970); Tollett, 411 U.S. at 267, 93 S.Ct. at 1608; Hudson, 760 F.2d at 1030.

Representations of the defendant at a plea hearing, as well as any findings made by the judge accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73074 (1977). "Solemn declarations in open court carry a strong presumption of verity." Id. Petitioner's guilty plea is valid unless he can

5

demonstrate that it was induced by threats, mispresentation, or by other improper promises. Brady v. United States, 397 U.S. 742, 755 (1970).

Petitioner agreed to pled guilty as charged in Counts 1 through 14 in exchange for the prosecution's agreement to drop the further allegations and enhancements and with the understanding that the maximum prison term to which Petitioner could be sentenced was 35 years and the minimum prison term was 20 years 4 months. (RT 293-302.)

The record supports the conclusion that Petitioner's guilty plea was made voluntarily. Beyond Petitioner's self-serving statement, there is no evidence that the trial judge threatened Petitioner with a long term sentence if he did not pled guilty. As stated by the Court of Appeal:

> Our review of the reporter's transcript of the trial court proceedings and prosecutor Donovan's declaration- - both quoted virtually verbatim above - - belies any hint of coercion on petitioner in the superior court. As the People observe in their letter brief:
> [W]hat the record establishes is that the only pressure exerted on [Petitioner] was the pressure exerted by the fact that he had to choose between going to trial, which would mean facing life in prison if convicted on all counts and if the further allegations and enhancements were found true, or pleading guilty as charged in counts 1 through 14, with a maximum imprisonment of thirty-five years. As to this decision, the court was ready to go to trial and gave [Petitioner] every opportunity to make his decision one way or the other.
> . . . It was not that [Petitioner] was coerced into pleading guilty; rather, it was that he did not want to suffer a lengthy prison commitment. And it was Sue Thao's crimes, not the court's conduct, that made that commitment inevitable.
> The record simply does not reflect any coercion on the part of the trial court.

(Respondent's Exhibit E, at 28.)

Petitioner is not entitled to federal habeas relief on this claim because he failed to present sufficient evidence that the trial judge made any threats, misrepresentations, or other improper promises to rebut the "strong presumption of verity" of his guilty plea. See Blackledge, 431 U.S. at 74. The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

D.     Ineffective Assistance of Counsel

Petitioner contends that defense counsel was ineffective because he mislead Petitioner as to the indicated sentence. Specifically, Petitioner contends that he believed he would receive 10 years pursuant to the plea agreement.

6

1    The law governing ineffective assistance of counsel claims is clearly established for the
purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe,
151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective
assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S.
668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First,
the petitioner must show that counsel's performance was deficient, requiring a showing that
counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by
the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's
representation fell below an objective standard of reasonableness, and must identify counsel's
alleged acts or omissions that were not the result of reasonable professional judgment
considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348
(9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges
a strong presumption that counsel's conduct falls within the wide range of reasonable
professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v.
Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

    Second, the petitioner must show that counsel's errors were so egregious as to deprive
defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must
also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's
ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356,
1461 (9th Cir. 1994). To set aside a conviction or sentence solely because the outcome would
have been different, but for counsel's error, may grant the petitioner a windfall to which the law
does not entitle him. Lockhart v. Fretwell, 506 U.S. 364, 369-70, 113 S.Ct. 838, 842 (1993).
Thus, if the court finds that counsel's performance fell below an objective standard of
reasonableness, and that but for counsel's unprofessional errors, the result of the proceeding
would have been different, the court must then ask whether despite the errors and prejudice the
trial was fundamentally fair and reliable. Id.

    A court need not determine whether counsel's performance was deficient before
examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

7

1  Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove

2  prejudice, any deficiency that does not result in prejudice must necessarily fail.

3        Ineffective assistance of counsel claims are analyzed under the "unreasonable

4  application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d

5  1058, 1062 (2000).  With this standard in mind, the Court now turns to each of Petitioner's

6  claims of ineffective assistance of counsel.

7        In rejecting Petitioner's state habeas corpus petition, the Court of Appeal stated the

8  following:

9        In a supporting declaration attached to the People's letter brief filed April 18, 2000,

10  petitioner's trial counsel, Eddie Ruiz, stated in relevant part:

> "After the other four defendants in this case had entered pleas of guilty and after a jury had been selected to try [Petitioner's] case, [Petitioner] indicated to me that he wished to enter pleas of guilty as charged.
> "I informed [Petitioner] that, if he plead guilty, the maximum term of imprisonment he would serve was 35 years and the minimum term he would serve was 20 years and four months.  The plea bargain offered by the prosecution was that [Petitioner] plead guilty as charged in the fourteen counts of the information in exchange for the dismissal of the further allegations and enhancements.  In light of the evidence against [Petitioner] - - including eyewitness identification and the D.N.A. tests incriminating him - - and in light of the substantially longer term of imprisonment [Petitioner] would serve if, at jury trial, he were convicted on all counts and all the further allegations and enhancements were found to be true, I believed it was a reasonable course for [Petitioner] to accept the prosecutor's offer.
> "I explained each and every aspect of the plea bargain and its consequences to [Petitioner] at least four times. [Petitioner] was very emotional at the time that he was entering his pleas but that was because of the substantial prison time he would have to serve pursuant to the plea bargain; it was not because he did not understand the proceedings and it was not because he was being coerced into pleading guilty.  I believe that he understood all of his constitutional rights, that he waived those rights knowingly and intelligently, and that he understood the consequences of his plea bargain."
> Attorney Ruiz's declaration, combined with that of prosecutor Donovan, refutes petitioner's claim that someone told him he was entering a plea bargain in exchange for a maximum state prison term of 10 years.  Even a cursory review of the reporter's transcript of the change of plea hearing clearly shows that counsel acted in a deliberate and methodical fashion when representing petitioner.  Petitioner has failed to establish deficient performance by trial counsel under an objective standard of professional reasonableness.  Moreover, it is not reasonably probable that, but for counsel's alleged failings, the result would have been more favorable to petitioner.  As prosecutor Donovan declared, the maximum term of imprisonment to which petitioner could have been sentenced was 70 years plus three-life terms.  In addition, the evidence against petitioner included fingerprint evidence and DNA evidence identifying him as one of the two perpetrators of the sexual crimes.

(Respondent's Exhibit E, at 29-30.)

Petitioner's claim that he was mislead regarding the sentence to which he was pleading guilty to is unsupported by the record. As pointed out by the Court of Appeal, Petitioner's counsel declared that he informed Petitioner pursuant to the plea bargain the maximum he was facing was 35 years and the minimum was 20 years 4 months. This exact warning was instructed to Petitioner by the trial court at the time of taking Petitioner's guilty plea. (RT 296.) A review of the taking of the plea reveals that the trial court and defense counsel were very careful in making sure that Petitioner understood the nature and consequences of his guilty plea. As Petitioner's counsel indicated, Petitioner was emotional at the time of his guilty plea because of the substantial amount of prison time he was facing. Petitioner has not provided any persuasive evidence which would negate his unequivocal representations to the trial court that he entered his plea voluntarily and that he was aware of the consequences and maximum sentence that could be imposed pursuant to the plea.

Even assuming counsel was somehow deficient, Petitioner has not shown any prejudice. As stated by the Court of Appeal, if Petitioner had gone to trial and been convicted he was facing 70 years plus three-life terms. Further, the evidence against Petitioner consisted of fingerprint evidence and DNA evidence identifying him as one of the two perpetrators of the sexual crimes. In light of the strong evidence against Petitioner it is not reasonably probable that the result of the outcome would have been any different; in fact, it likely would have been worse.

E.   Ineffective Assistance of Interpreter

Petitioner contends that the interpreter misled him regarding the indicated sentence pursuant to the plea agreement. Specifically, Petitioner contends that the interpreter failed to translate what the judge said and stated the sentence would be 10 years. Petitioner contends that the interpreter and counsel answered the judge's questions, purportedly on Petitioner's behalf, when Petitioner did not understand the question, and/or they misrepresented Petitioner's answers.

The Ninth Circuit has treated a claim that an interpreter translated counsel's advice inaccurately as an ineffective counsel claim. See Chacon v. Wood, 36 F.3d 1459, 1464-65 (9th Cir. 1994), superseded by statute on other grounds in Morris v. Woodford, 229 F.3d 775, 779 (9th

Cir. 2000).

The State submitted a declaration by interpreter John Moua in support of its response to Petitioner's state habeas corpus petition submitted to the Fifth District Court of Appeal. The declaration stated the following:

> I was sworn to interpret in the Hmong language for [Petitioner] Sue Thao on October 28, 1999, at which time [Petitioner] entered his pleas of guilty to the charges pending against him.
> [Petitioner] was informed that, if he plead guilty as charged, the maximum sentence he could receive was 35 years and the minimum sentence he could receive was 20 years and 4 months.
> [Petitioner] indicated to me that he understood the contents of the form he initialed and signed, setting forth his constitutional rights, his waiver of those rights, and his understanding of the maximum and minimum terms he could be sentenced to upon entering his pleas of guilty.
> [Petitioner] indicated to me that he understood that, if he went to trial on the charges against him and was convicted, his sentence would be substantially longer than the maximum term offered as a result of his pleading guilty.
> [Petitioner's] concern about pleading guilty was that he did not want to be separated from his children for more than 10 years, so he begged the judge for a term of 6 to 10 years.
> [Petitioner] ultimately entered his pleas of guilty as charged in the information because he recognized that he would serve a shorter prison term as a result of his guilty plea than if he were convicted at a jury trial.
> [Petitioner], his defense attorney Eddie Ruiz, and I discussed over and over gain the plea bargain offered by the prosecutor, and [Petitioner] understood the nature and consequences of the plea.
> While [Petitioner] was very unhappy with his guilty pleas because of the time he would be away from his family as a result of the pleas, he understood that it was better for him to plead guilty than go to trial, considering the fingerprint and D.N.A. evidence against him.

(Respondent's Exhibit C.)

In rejecting Petitioner's claim, the Court of Appeal held as follows:

> Applying a similar standard to an interpreter or translator, we simply cannot say that petitioner in the instant case has established, by a preponderance of substantial, credible evidence, that John Moua's performance was deficient. As the People point out, the court expressly informed [Petitioner] that the maximum prison term he could receive was 35 years and the minimum prison term he could receive was 20 years 4 months. Petitioner signed a written plea form expressly informing him of the same maximum and minimum terms of imprisonment. In open court and in writing, petitioner expressly stated he understood those terms.
> In our view, the appellate record and the declarations of the prosecutor, defense counsel, and the court interpreter strongly refute petitioner's declaration that he did not understand the penal consequences of his no contest pleas. [Petitioner's] petition for writ of habeas corpus will therefore be denied. (footnote omitted.)

(Respondent's Exhibit E, at 32.)

The transcript of the guilty plea proceedings undermines Petitioner's claim that he was misadvised of the sentence he would receive pursuant to his guilty plea. As stated by the Court of Appeal, the declarations of the prosecutor, defense counsel, and court interpreter strongly refute Petitioner's self-serving contention that he did not understand the sentence to which he was pleading guilty. (See Respondent's Exhibits C, attached to Answer.) What is clear from the record and the declarations submitted by the prosecutor, defense counsel, and interpreter, is that it was Petitioner's desire alone, not pursuant to the plea bargain, that he not spend more than ten years in prison.

Petitioner carefully, as evidenced by his plea after the jury was selected and trial was scheduled to begin, weighed the option of going to trial and risking a more severe sentence or accepting the plea. Although the interpreter indicated that Petitioner begged the judge for a term of 6 to 10 years, the record appears clear that based on the judge's inability to inform Petitioner of the potential sentence, Petitioner chose to pled guilty and receive a lesser sentence than that to which he may, and likely would have received, had he gone to trial. That is the risk Petitioner took. As previously stated, had Petitioner not accepted the guilty plea and been convicted at trial, he would have been facing a much more severe sentence than that to which he received pursuant to the plea agreement, and given the strength of the prosecution's case including DNA evidence and fingerprints, it is not reasonable likely that the outcome would have been any different. Accordingly, Petitioner's claim fails on the merits.

F.   Inaccuracy of Transcript

Petitioner contends that the trial transcript is inaccurate. Petitioner asserts that the transcript does not accurately reflect the proceedings that took place at the change of plea hearing.

Because this claim was first raised in a state habeas corpus petition filed only in the California Supreme Court, there is no state court determination addressing Petitioner's inaccuracy of transcript claim. In such a circumstance, the Court undertakes an "independent review of the record." Riggs v. Fairman, 399 F.3d 1179 (9th Cir. 2005) (citing Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir. 2002).

1    As Respondent submits, Petitioner's claim is refuted by the declarations submitted by the
2 prosecutor, defense counsel, and translator.  The declarations corroborate the transcripts by
3 confirming that Petitioner's plea was voluntary.  This is not an instance where the court reporter
4 prepared an unusable transcript.  Compare United States v. Wilson, 16 F.3d 1027, 1031 (9th Cir.
5 1994).

6    Further, Petitioner has not demonstrated any prejudice by the alleged inaccuracies in the
7 transcripts.  See e.g. United States v. Wilson, 16 F.3d at 1031 (federal defendant must show
8 prejudice from an incomplete record.)  In light of the corroboration of the transcript provided by
9 the declarations it is inconceivable that Petitioner could demonstrate prejudice from the alleged
10 errors.  The state courts' determination of this issue was not contrary to, or an unreasonable
11 application of, clearly established Supreme Court precedent.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.    The petition for writ of habeas corpus be DENIED; and

2.    The Clerk of Court be directed to enter judgment in favor of Respondent.

This Report and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Report and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    April 28, 2005**               /s/ Dennis L. Beck
3b142a                    UNITED STATES MAGISTRATE JUDGE